IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
January 28, 2022 01:46 PM
ST-2016-CV-00597
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| ELIZABETH SERVICE, | ) | CASE NO. ST-2016-CV-00597 |
| | ) | |
| Plaintiff, | ) | ACTION FOR DAMAGES |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| ISIDOR PAIEWONSKY ASSOCIATES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Cite as: 2022 VI Super 8U

**MEMORANDUM OPINION AND ORDER**

I.  **INTRODUCTION**

¶1   **THIS MATTER** is before the Court on the following:

1.  Isidor Paiewonsky's Motion for Summary Judgment, filed on January 31, 2020;

2.  Plaintiff's Opposition to Defendant's Renewed Rule 56 Motion, filed on February 4, 2020;

3.  Isidor Paiewonsky's Reply to Plaintiff's Response in Opposition to Defendant's Renewed Motion for Summary Judgment, filed on February 18, 2020;

4.  Plaintiff's Supplemental Request Re Summary Judgment, filed on April 26, 2021,

5.  Plaintiff's Second Supplemental Request for Ruling Re Summary Judgment, filed on August 9, 2021; and

6.  Plaintiff's Third Request for Ruling Re Summary Judgment, filed on October 15, 2021.

¶2   Viewing all reasonable inferences drawn from the evidence provided in a light most favorable to Plaintiff Elizabeth Service ("Service"), as the non-moving party, and taking all properly supported allegations as true, the Court finds that there exist genuine issues as to material facts which requires denial of Defendant Isidor Paiewonsky [Associates, Inc.]'s Motion for Summary Judgment.

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
Memorandum Opinion and Order
Page 2 of 13

2022 VI Super 8U

## II.     FACTUAL AND PROCEDURAL BACKGROUND

¶3     This case presents claims of negligence and premises liability by Service, a former store manager for Little Switzerland, against the store's landlord: Isidor Paiewonsky Associates, Inc. ("IPA"). Service alleges that on March 10, 2016, while preparing to open the store, she raised an awning "by flipping it out and secured the latch," but "as she walked inside to tie the rope, the awning fell and hit her in the back of the head."[1] Service sought medical attention as a result of this incident and she was subsequently diagnosed as suffering from "a very serious permanent and marked impairment and brain damage."[2] IPA claims that "[p]ursuant to its Lease Agreement with Little Switzerland, [it] owed no legal duty to the Plaintiff to maintain and repair the subject store awning[,]"[3] and, therefore, should not be held liable.

¶4     On December 23, 2009, Little Switzerland and IPA entered into a Lease, which provided, in relevant part, responsibilities of IPA, as Landlord, with respect to the Demised Premises in question:

12. LIABILITY

A.     The Landlord assumes no liability or responsibility whatsoever with respect to the conduct and operation of the business to be conducted in the Demised Premises. The Landlord shall not be liable for any accident to or injury to any person or persons or property in or about the Demised Premises which are caused by the conduct and operation of said business or by virtue of equipment or property of the Tenant in said premises.

…

D.     The Landlord shall not be liable to the Tenant, its members, employees, agents, representatives, invitees, licensees, or guests, for (i) any damage, compensation or claim arising from the necessity of repairing any portion of the Demised Premises, (ii) any interruption in the use of the Demised Premises, (iii) any injury or damage resulting from the use or operation (by the Landlord, the Tenant or any other person) of the cooling, electrical or plumbing systems or equipment…

…

19. REPAIR AND MAINTENANCE OF DEMISED PREMISES

A.     The Landlord shall, at its expense, maintain and perform any repairs necessary to keep the roof, foundation, exterior walls and other structural components of the Building in structurally sound condition.

…

---

[1] Def.'s Mot. for Summ. J. at 4
[2] Pl.'s Opp. to Def's. Rule 56 Mot. at 7 (*referencing* Ex. 4).
[3] Def.'s Mot. for Summ. J. at 2

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
Memorandum Opinion and Order
Page 3 of 13

2022 VI Super 8U

C.      The Tenant covenants and agrees that in all other respects the exterior and interior of the Demised Premises, including, without limitation, painting, windows, doors, ceilings, floors, walls, attachments, fixtures, electrical, plumbing, air conditioning and all other systems and equipment, shall be maintained, repaired and kept in good order and condition, or replaced if necessary, at the expense of Tenant. If any systems or equipment are designed to serve the Demised Premises and other premises in the Building, Landlord shall cause any repairs, maintenance and/or replacements thereof to [b]e made, and, within ten (10) days after demand therefor, Tenant shall pay to Landlord its proportionate share of the cost of any such work. If the Landlord deems that any maintenance or repairs are necessary or that Tenant has failed to perform its obligations under this Paragraph, Landlord may demand that the Tenant make the same, and if the Tenant refuses or fails to do so within ten (10) days after demand therefor, … the Landlord may make or cause to be made such maintenance or repairs and shall not be responsible to the Tenant for any loss or damage… If the Landlord makes or causes to be made such repairs, the Tenant shall pay to the Landlord…the cost thereof. [4]

¶5      In the same Lease, the parties also agreed to a modification that would commence no earlier than May 1, 2010, and no later than June 30, 2010, that reduced the size of the Demised Premises:

C. Modification of Premises. Landlord and Tenant agree that the Demised Premises shall be modified to reduce the size of the Demised Premises to approximately 1,888 square feet, which shall include approximately 1,818 square feet of retail space […][5]

¶6      In its Motion for Summary Judgment, IPA argues that the Lease "unambiguously imposes the duty to repair the awnings on Little Switzerland[;]"[6] therefore, it "owed no legal duty to the Plaintiff to maintain and repair the subject store awning"[7] and should not be held liable. Conversely, Service claims that IPA did have a duty to make sure the awnings were safe and that "[t]here are material issues of fact in dispute as to whether Paiewonsky had notice of the dangerous condition of the awning."[8]

¶7      According to IPA, "[t]he awning in question was attached by a hinge to a metal frame inside the store."[9] Its claim that the hinge was located inside the store is not supported by the diagram that depicts the dimensions of the Demised Premises. According to IPA, "[w]hen opening the store, [Service] would allow the awning to swing out from the inside of the store so that it could be latched onto the exterior of the building."[10] The parties agree that the awning in question

---

[4] Def.'s Mot. for Summ. J. Ex. B
[5] Def.'s Mot. for Summ. J. Ex. B
[6] Def.'s Mot. for Summ. J. at 8
[7] Def.'s Mot. for Summ. J. at 2
[8] Pl.'s Opp. to Defs.' Renewed Mot. For Summ. J. at 13
[9] Def.'s Mot. for Summ. J. at 4.
[10] *Id.*

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
**Memorandum Opinion and Order**
**Page 4 of 13**

2022 VI Super 8U

"was required to open and had to be latched to the outside of the building."[11] However, the parties disagree as to whether the latch of the awning itself was located within the interior or exterior of the building (i.e. within the Demised Premises). The photos below depict where the awning latch was located:

 

¶8    Prior to the March 10, 2016 incident, Service made two reports to Little Switzerland management that the awning was not working properly.[12] In its Motion for Summary Judgment, IPA argues that "[t]hese reports were never forwarded to [it] and, therefore, [it] was entirely unaware that the awning [was] not working properly."[13] In response, Service claims that not only did IPA have a duty of care to maintain the awning, it "knew, or should have known, of the dangerous condition of the awing *[sic]* and taken steps to address it."[14] IPA's "President and Director of Real Estate, James Eilen, admitted seeing persons like Ms. Service opening the

---

[11] Pl.'s Opp. to Def.'s Renewed Rule 56 Mot. at 3
[12] See Ex. A of Dep. of Elizabeth Service 34: 14-17
[13] Def.'s Mot. for Summ. J. at 4 (referencing James Eilen deposition 14:25-15:1-4).
[14] Pl.'s Opp. to Def.'s Rule 56 Mot. at 13

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
Memorandum Opinion and Order
Page 5 of 13

2022 VI Super 8U

awnings by themselves, which he said was unsafe[,]"[15] yet took no action to stop the dangerous practice.

## III.   LEGAL STANDARDS

### a.  Summary Judgment

¶9      Virgin Islands Rule of Civil Procedure 56 provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[16]   The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of any material fact and that it is entitled to judgment as a matter of law.[17]   This burden may be met by pointing out that there is an absence of evidence to support a particular element of the nonmoving party's case.[18]

¶10      Once the moving party makes its showing, the opposing party must "make a showing sufficient to establish existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."[19]   The opposing party may not rest on mere allegations but must present actual evidence showing a genuine issue for trial.[20]   The party opposing summary judgment "shall affix to [its brief] copies of, and cite to, the precise portions of the record relied upon as evidence of each material fact."[21]   The opposing party must provide more than a scintilla of supporting evidence to survive a motion for summary judgment.[22] A fact is material where it "might affect the outcome of the suit under the governing law[.]"[23] Further, "because summary judgment is a drastic remedy, the grant of a motion for summary judgment is allowed only where the moving party shows that the 'pleadings, the discovery and disclosure materials on file, and any affidavits, show there is no genuine issue as to any material fact.'"[24] "[A]single, nonconclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law."[25]

---

[15] Pl.'s Mot. In Opp'n to Defs.' Renewed Mot. For Summ. J. at 13

[16] V.I. R. Civ. P. 56(a).

[17] *Id.*

[18]  *Williams v. United Corp.*, 50 V.I. 191, 193–95 (V.I. 2008)

[19] *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013)

[20] *Williams*, 50 V.I. at 194.

[21] *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 658-59 (2019) (citing *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[22] *Anderson v. Am. Fed'n of Teachers*, 67 V.I. 777, 788-89 (2017) (citing *Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 527-28 (V.I. 2018)).

[23] *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[24] *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 658-59 (2019) (*citing Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[25] *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d. 180, 189–90 (3d Cir.2011) (*citing Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–63 (3d Cir.2009)).

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
Memorandum Opinion and Order
Page 6 of 13

2022 VI Super 8U

¶11    In considering the evidence provided by both parties, the Court is required to view all inferences to be drawn from that evidence in a light most favorable to the nonmoving party before ruling.[26]

### b. Negligence and Premises Liability

¶12    It is well established that the elements of a negligence cause of action are: "(1) a legal duty of care to the plaintiff; (2) defendant's breach of that duty of care; (3) factual and legal causation; and (4) damages."[27] "Proximate cause is established where the party who bears the burden shows that 'an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act.'"[28] "To determine whether a duty exists, the court must consider the following factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on defendant."[29]

¶13    The Supreme Court of the Virgin Islands has "recognized foreseeability as the touchstone of premises liability…because foreseeability permeates every element of a negligence claim."[30] In *Aubain v. Kazi Foods of the V.I., Inc.,* the Court explained that "in the context of a premises liability action, a plaintiff must establish breach of duty by showing that the defendant had actual or constructive notice of the dangerous condition."[31] Further, "while foreseeability of harm and notice of a dangerous condition share a certain conceptual overlap…[,][n]otice requires a far more concrete inquiry into the particular cause of … injury."[32] *Aubain* reasoned that "[e]ven in the absence of direct evidence establishing the precise length of time a dangerous condition existed, a plaintiff may satisfy the constructive notice requirement by introducing evidence tending to show that the defendant failed to conduct reasonably frequent and thorough inspections of the premises."[33]

¶14    Furthermore, in *Perez*, "[l]iability for… foreseeable harm is based on the possessor's superior knowledge of the property, as the possessor is in the best position to know of potentially dangerous conditions on the property."[34] In *Machado*, the Supreme Court of the Virgin Islands used foreseeability of harm to ascertain a land possessor's duty of reasonable or ordinary care in premises liability actions:

---

[26] *Williams v. United Corp.*, 50 V.I. 191, 194(V.I. 2008).

[27] *Coastal Air Transp. v. Royer*, 64 V.I. 645, 651 (V.I. 2016); *See also Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I., 373, 380 (V.I.. 2014).

[28] *Sealey-Christian v. Sunny Isle Shopping Center, Inc.*, 52 V.I. 410 (V.I. 2009), *overruled on other grounds by Machado*, 61 V.I. at 385-86

[29] *Aubain v. Kazi Foods of V.I., Inc.*, 70 V.I. 943, 950 (2019)(*quoting Bodkin v. 5401 S.P., Inc.*, 768 N.E.2d 194, 203 (Ill. App. Ct. 2002).

[30] *Id.*

[31] *Id.* (*referencing Perez*, 59 V.I. at 529-30).

[32] *Id.*

[33] *Id.*

[34] *Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. at 533 (V.I. 2018)).

Characterization of an entrant as an invitee, licensee, or trespasser has no bearing on the possessor's superior knowledge of the property, and to allow summary judgment where there is evidence that a plaintiff's injury was foreseeable to a land possessor, yet the possessor did not take reasonable action to prevent that injury, inappropriately places the focus of attention on the plaintiff's actions alone.[35]

¶15 *Machado* explained that "in the absence of actual notice, evidence that the owner should have discovered the danger and taken steps to remedy it can establish constructive notice."[36] Additionally, the Court recognized that one "way that notice of a dangerous condition can be imputed to a land possessor is through evidence that the condition persisted over a long enough period of time that the owner should have become aware of it through the existence of reasonable care."[37] Nevertheless, "the constructive notice requirement will not be satisfied when a defendant introduces uncontroverted evidence showing that the defect could not have been discovered even through reasonable inspection."[38]

## IV. ANALYSIS

¶16 At issue in the instant Motion for Summary Judgment is whether IPA owed a duty to maintain and repair the awning that injured Service. Upon review of the parties' pleadings, relevant testimony, and all other reasonable inferences from the evidence in the light most favorable to Service, the Court finds that there exists a genuine dispute as to certain material facts concerning: (1) responsibility to repair and maintain the awning in question and (2) whether, at a minimum, IPA had constructive notice of the danger of the awning causing injury.

### A. The Court finds that the awning and its supporting mechanisms were located on exterior walls that were the responsibility of Isidore Paiewonsky Associates, Inc.

¶17 The Court finds that the parties' modification to the Lease reduced the Demised Premises to an area within the walls of the building owned by IPA and that the awning and its supporting mechanisms were located on exterior walls that were the responsibility of IPA.

¶18 Paragraph 19 of the Lease governs the applicable landlord and tenant duties to repair and maintain the Demised Premises. In pertinent part, the landlord (i.e., IPA) "shall maintain and perform any repairs necessary to keep the roof, foundation, exterior walls and other structural components of the Building in structurally sound condition." It further states, "in all other respects, the exterior and interior of the Demised Premises…shall be maintained, repaired and kept in good order and condition, or replaced if necessary at the expense of the Tenant."[39] Subsection C indicates that the tenant (i.e., Little Switzerland) is responsible for maintaining and repairing "all other respects [of] the exterior and interior of the Demised Premises," including attachments and fixtures.

---

[35] *Machado* at 386.
[36] *Machado*, 61 V.I. at 392-393 (*quoting Williams*, 50 V.I. at 195-196).
[37] *Id.* at 393.
[38] *Aubain*, at n. 2
[39] Def. Mot. for Summary Judgment Ex. 2

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
Memorandum Opinion and Order
Page 8 of 13

2022 VI Super 8U

¶19    IPA argues in its Motion that it did not possess a duty to maintain and repair the awning. First, it claims that "[t]he duty to protect others from injury resulting from a dangerous condition on a premises does not rest on legal ownership of the dangerous area but on the right to control access by third parties."[40] Second, IPA claims that the Lease "unambiguously imposes the duty to repair the awnings on Little Switzerland."[41] In support, it argues that "Plaintiff's Complaint is devoid of any allegation that the building was structurally unsound…[and] [i]n the absence of any such allegation, the duty to repair would default to Little Switzerland through the catch-all language in the Lease."[42] Further, IPA argues that the awning, in ordinary use, should be considered an attachment or fixture, "which [is] Little Switzerland's responsibility to repair."[43] Lastly, IPA argues "should the Court choose to consider extrinsic evidence, the conduct between the parties to the Lease reinforces Little Switzerland's responsibility to maintain and repair the awnings."[44]

¶20    In contrast, Service asserts in her Opposition that "the Lease did not include the entire building, but only a portion of the interior of the building"[45] and the "awnings in question were attached to the portion of the premises retained by the Landlord, Paiewonsky, which was expressly excluded from the Demised Premise."[46] Service further states that the Lease agreement "marks the interior of the store area as being 49'11 $3/4$" by 47'11 $1/2$', which makes it even clearer that the parties carefully excluded the doorway sections from the lease."[47] Furthermore, Service claims that "the awnings were on the building before the lease even started, [so] there can be no dispute that Paiewonsky owned them."[48] Service contends that "the fact that the tenant attempted to repair the awnings does not relieve the landlord…of its separate duty to make its retained portion of the premises safe to invitees such as Service, as the duty to maintain one's premises in a reasonably safe condition is a non-delegable duty."[49]

¶21    Generally, Courts in the Virgin Islands decline to consider extrinsic evidence when "the written terms of a contract appear unambiguous."[50] However, "[b]efore making a finding concerning the existence or absence of an ambiguity, [the Court will] consider the contract language…and the extrinsic evidence offered in support of each interpretation," rather than simply determine whether the language is clear from the Court's point of view.[51] "Ordinarily, when the terms of a contract are unambiguous, the Superior Court treats the issue of the meaning of those terms as a question of law, but if the terms are ambiguous, the issue of the meaning of the terms

---

[40] Def.'s Mot. for Summ. J. at 7
[41] Def.'s Mot. for Summ. J. at 8
[42] Def.'s Mot. for Summ. J. at 8
[43] Def.'s Mot. for Summ. J. at 8
[44] Def.'s Mot. for Summ. J. at 10
[45] Pl.'s Opp. to Def.'s Rule 56 Mot. at 2
[46] Pl.'s Opp. to Def.'s Rule 56 Mot. at 10
[47] Pl.'s Opp. to Def.'s Rule 56 Mot. at 11
[48] Pl.'s Opp. to Def.'s Rule 56 Mot. at 11
[49] Pl.'s Opp. to Def.'s Rule 56 Mot. at 12 (*referencing Machado* at 394).
[50] *White v. Spenceley Realty, LLC*, 53 V.I. 666, 678 (2010)
[51] *Id.*

becomes a question of fact."[52]

> Extrinsic evidence may include ... the conduct of the parties that reflects their understanding of the contract's meaning. Nevertheless, a finding that extrinsic evidence renders a contract latently ambiguous will typically defeat a motion for summary judgment and necessitate that the trier of fact resolve the ambiguity in light of the extrinsic evidence. Appellate courts, however, have held that, notwithstanding a latent ambiguity, "if the court finds that a contract is ambiguous and that the extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide" at the summary judgment stage. [53]

¶22     Here, IPA argues that the Court should consider extrinsic evidence that Little Switzerland used their own maintenance worker to make awning repairs prior to the incident in question.[54] However, the mere fact that the tenant made prior repairs to the awning does not relieve IPA of its duty to maintain the premise in a reasonably safe condition.[55] Therefore, the Court finds that the diagrams and language of the Lease unambiguously show that the exterior walls of the building, to which the awnings were attached, are not part of the Demised Premises as shown in Exhibit B:



¶24     In accordance with Paragraph 19 of the Lease, IPA is responsible for maintaining any repairs necessary to keep the exterior walls and other structural components of the building in sound condition. The depiction above shows that the area where the awnings were latched to the exterior wall is not within the Demised Premises. Further, the Court finds that the  measurements

---

[52] *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 707 (2011)

[53] *White v. Spenceley Realty LLC,* 53 V.I. 666, 678–79 (V.I.2010). (citing *Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.,* 989 F.2d 132, 135 (3d Cir.1993)) (citations omitted); and *In re Columbia Gas System, Inc.,* 50 F.3d 233, 241 (3d Cir.1995) (citations omitted)).

[54] Def.'s Mot. for Summ. J. at 10.

[55] *See e.g., Machado* (maintaining its property in a reasonably safe condition is the very essence of duty of care).

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
Memorandum Opinion and Order
Page 10 of 13

2022 VI Super 8U

for the interior of the store as found in the Lease agreement, being 49'11 $^{3}/_{4}$" by 47'11 $^{1}/_{2}$', clearly omits the doorway sections from the Demised Premises.

¶25    Although IPA argues that the awning was not its responsibility because it was attached to the exterior portion of the Demised Premises, the Court finds that the area in which the latch was located according to the plain language of the Lease, would not be considered part of the Demised Premises. Because the awning latch is located within an area retained by IPA and not included in the description of the Demised Premises of the Lease, IPA has failed to meet its burden of proof that it did not owe a duty to maintain and repair the awning.

¶26    The Court finds that IPA's characterization or description of the awning, its operational and support mechanisms are not supported by references to the record. Further, Section 12 of the Lease agreement, relied upon by IPA, does not address the awning and does not absolve IPA of liability with respect to the failure of the awning to remain in place.

### B. The Court finds that there are genuine issues of material fact as to whether Paiewonsky had constructive notice of the dangerous condition of the awning.

¶27    In cases of premises liability in the Virgin Islands, a plaintiff may show a breach of duty by establishing that the defendant had actual or constructive notice of the dangerous condition.[56] Evidence that the dangerous condition persisted for many months prior to the incident sufficiently creates a jury question of notice.[57]

¶28    Here, Service claims that "[b]ased on this record, the evidence clearly supports a jury finding that Paiewonsky 'knew or should have known' about the problems with the awning because of the multiple emails that were sent prior to the incident …, the near misses that other employees of Little Switzerland will testify about, and the testimony of Mr. Eilen that he knew the operation of the awning was a two person job, yet he did not alert anyone to this danger."[58] In sum, Service's Opposition sets forth that "a jury could reasonably conclude that this defective awning condition persisted for a sufficient amount of time such that Paiewonsky knew or should have known about it, breaching its duty to correct this dangerous condition."[59]

¶29    In contrast, IPA relies upon the evidence that Service and others had reported problems with the awnings directly to Little Switzerland and not to IPA.[60] Service's response is that, having never seen the Lease, she did not realize that she should have sent her emails to IPA. Given that Service was operating the awning in her capacity as store manager its is not unreasonable for her to report problems to her superiors and not to her employer's landlord.

---

[56] *Aubain* at 950 (*referencing Perez*, 59 V.I. at 529-30).
[57] *See Machado* (*referencing Daughtery v. City of New York,* 524 N.Y.S.2d 703, 706 (N.Y. App. Div. 1988)).
[58] Pl.'s Opp. to Def.'s Rule 56 Mot. at 15.
[59] Pl.'s Opp. to Def.'s Rule 56 Mot. at 16.
[60] Def.'s Reply to Pl.'s Resp. in Opp.to Def.'s Renewed Mot. for Summ. J. 6 (referencing Exhibits G and H from Service to Little Switzerland attached to Def.'s Mot. for Summ Jud.)

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
Memorandum Opinion and Order
Page 11 of 13

2022 VI Super 8U

¶30    IPA relies upon testimony that in response to Service's reports about the awning, Little Switzerland used their own maintenance worker to change the latches and drill new holes.[61] IPA additionally argues that on another occasion, Service "reported her March 10, 2016 injuries to Little Switzerland and submitted a corresponding work order to fix the awning…[but] Little Switzerland neither notified Isidor Paiewonsky of the Plaintiff's incident, nor submitted any related maintenance requests for the awnings."[62] IPA cites to the Affidavits of Little Switzerland's employees to support its argument that there was a "mutual understanding between Little Switzerland and Isidor Paiewonsky that Little Switzerland was responsible for the awnings attached to its storefront."[63] The alleged mutual understanding as to responsibility for repair of the awning is undermined by the Lease agreement's section 25.F entitled "Entire Agreement; Modification that provides "…this Lease may not be modified, changed or terminated, in whole or in part in any manner other than by an agreement in writing signed by all parties hereto." The Court further finds that IPA's reliance upon prior problems with the awnings that were reported prior to the March 10, 2016 incident also supports the argument that the IPA had ample time and opportunity to inspect and discover problems with the awning's defective latch mechanism. As a result, the Court finds there exists a genuine dispute as to whether IPA had constructive knowledge of the awning's dangerous condition.

¶30    *Machado* provides that "evidence that a dangerous condition persisted for many months prior to the incident is sufficient to create a jury question of notice."[64] In this case, Service emailed her supervisor and building superintendent, Dilip Wadhwani on June 17, 2015, stating "…my front door awning is rubbing during opening and closing and it's becoming damaged…" Additionally, on November 2, 2015, Service emailed management of Little Switzerland, Sophia Rosario, stating that the "awnings are rubbing wall and tearing…Paint is rubbed away in main entrance due to awning issue."[65]

¶31    The Court agrees that IPA's President and Director of Real Estate, James Eilen's admission or observation that it was unsafe for a single person to open the awnings, supports a finding that IPA had constructive notice, if not actual notice, of the awning's potential dangers. "In the absence of actual notice, evidence that the owner should have discovered the danger and taken steps to remedy it can establish constructive notice."[66] *Machado* explained that one "way that notice of a dangerous condition can be imputed to a land possessor is through evidence that the condition persisted over a long enough period of time that the owner should have become aware of it through the existence of reasonable care."[67]

---

[61] Pl. Mot for Summ J. 5 (referencing Pl.'s Resp. to Def.'s Interrog. 9 attached as Ex. D).

[62] Pl.'s Opp. to Def.'s Rule 56 Mot. at 15 (*referencing* Eilen Depo 14:25-15:1-4).

[63] Def.'s Mot. for Summ. J. at 12 (*citing* Ex. I and J. Dilip Wadhwani, Little Switzerland's Director of Operations and Sophia Rosario, Little Switzerland's Project Manager).

[64] *Machado* at 393 (*referencing Daughty v. City of New York*, 524 N.Y.S.2d 703, 706 (N.Y. App. Div. 1988) *See also Bartholomee v. Casey*, 651 A.2d 908, 919-20 (Md. Ct. Spec. App. 1994)("evidence of a constant state of disrepair for one month was sufficient to create a jury question as to notice").

[65] Ex. 5 of Pl. Opp.

[66] *Machado*, 61 V.I. at 293-395 (*quoting Williams*, 50 V.I. at 195-196).

[67] *Id.* at 393.

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
Memorandum Opinion and Order
Page 12 of 13

2022 VI Super 8U

¶32  Additionally, in *Aubain*, the Supreme Court of the Virgin Islands opined that constructive knowledge may be presumed from prior reoccurring conditions:

> We have previously recognized that one way that notice of a dangerous condition can be imputed to a land possessor is through evidence that the condition persisted over a long enough period of time that the owner should have become aware of it through the exercise of reasonable care. But in order to establish notice through a recurring condition the recurring condition must occur prior to the incident at issue.[68]

¶33  The Court finds Service sufficiently established that the problem with the awning persisted for a significant enough period of time that IPA was put on constructive notice and should have become aware of it through the exercise of reasonable care. The conflicting testimonies in the record and the terms of the Lease agreement itself show that IPA has not met its burden of demonstrating that there is no genuine issue of any material fact and that it is entitled to judgment as a matter of law. [69]   IPA did not sufficiently introduce uncontroverted evidence that the defect could not have been discovered even through reasonable inspection,."[70] Given its circumstances, the instant case presents a perfect example of what the Supreme Court of the Virgin Islands has opined as one in which the determination of negligence should be made by a jury instead of a single judge at summary judgment.[71]

## V.   CONCLUSION

¶34  Upon review of the parties' pleadings, exhibits, and all other reasonable inferences from the evidence in the light most favorable to Service, the Court finds that there exists a genuine dispute as to certain material facts concerning: (1) responsibility to repair and maintain the awning in question and (2) whether IPA had constructive notice of the awning's dangerous condition.

Accordingly, it is hereby

**ORDERED** that Isidor Paiewonsky's Motion for Summary Judgment, which was filed on January 31, 2020 is **DENIED**; and it is further

**ORDERED** that Plaintiff's  Second Supplemental Request for Ruling Re Summary Judgment, filed on August 9, 2021, is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's Third Request for Ruling Re Summary Judgment, filed on October 15, 2021, is **DENIED as moot**; and it is further

---

[68] *Aubain* at 952 (*citing Mahoney v. J.C. Penney Co.*, 377 P.2d. 663, 673 (NM 1962) *Machado* at 393 (citations omitted).
[69] *Id.*
[70] *Aubain,* at n. 2
[71] *Rymer v. Kmart Corp.*, 68 V.I. 571, 576 (V.I. 2018).

*Elizabeth Service v. Isidor Paiewonsky Associates, Inc.*
Case No. ST-2016-CV-00597
**Memorandum Opinion and Order**
**Page 13 of 13**

2022 VI Super 8U

**ORDERED** that a copy of this Memorandum Opinion and Order shall directed to counsel of record.

DATED: January 28, 2022

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____ 01/28/22

_for_ **LATOYA CAMACHO**
    Court Clerk Supervisor _____/_____/_____